IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAY'QUAN SHANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:20-cv-00518 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| RUBENARD RISPER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the Court is a pro se complaint for alleged violation of civil rights (Doc. No. 1), filed pursuant to, e.g., 42 U.S.C. § 1983 by Plaintiff Day'Quan Shannon, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee. Plaintiff also filed an application to proceed in forma pauperis (IFP) (Doc. No. 4), which the Court will grant by Order entered contemporaneously herewith. The complaint is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof

if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a

2

Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that, on November 8, 2019, "CORE CIVIC and its officers" violated a security policy in force at TTCC "by allowing inmates to exit their housing units armed with weapons." (Doc. No. 1 at 1.) He alleges that the metal detectors on each unit "are seldom operational," and that as a result of "[t]he respondents knowingly and willingly den[ying] [him] the right to be secured while housed at CORE CIVIC, TTCC by failing to uphold its Institutional Policy"[1] as well as the correctional officers' oath of office and state and federal criminal law, he suffered eight stab wounds or lacerations. (*Id.* at 1–2 (citing Tenn. Code Ann. §§ 39-16-403, 41-1-103 and 18 U.S.C. §§ 241, 242).) Plaintiff alleges that he insisted upon having his wounds treated at an outside hospital for fear of internal bleeding, but that he "was denied that right which constitutes conspiracy against rights." (*Id.* at 1.) He states that he was returned to the same housing unit after the attack, despite "a strong possibility of a subsequent attack" since two of his assailants were also housed in the unit, "which constitutes negligence." (*Id.* at 2.) Plaintiff further alleges that an investigation into "employee misconduct and the negligence displayed by the Chief of Security and other staff members" was not conducted, nor was the formal fact-finding procedure required by prison policy. (*Id.*)

The complaint's caption names Rubenard Risper as a Defendant, though Risper is not mentioned in the body of the complaint. For purposes of this initial review, the Court presumes that Risper is the "Chief of Security" referenced in the complaint. The Court will also liberally

---

[1] Plaintiff identifies "Policy # 107.01(C) & (J)" but does not explain these policy provisions or how they were violated.

construe the complaint to name CoreCivic, the private corporation that manages TTCC, as a Defendant. As relief for the harms allegedly inflicted by Risper and CoreCivic's "negligence, breach of duty, and deprivation of rights," Plaintiff asks the Court to award damages and impose fines in the total amount of $5,500,000.00. (*Id.* at 2.)

IV. ANALYSIS

Although not explicitly named as such, the constitutional claim implicit in Plaintiff's allegations is an Eighth Amendment failure-to-protect claim. An Eighth Amendment violation may occur when prison officials fail to protect one inmate from an attack by another inmate. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). Risper and his employer CoreCivic are proper defendants to such a claim, inasmuch as CoreCivic performs the traditional state function of operating a prison and is thus a state actor for purposes of Section 1983, *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996), though it may only be held liable for harms caused by the execution of a corporate policy. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001).

However, "not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). In order to state a viable failure-to-protect claim, the inmate must show that officials were deliberately indifferent "to a substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To meet this standard, the inmate must show that officials were "subjectively aware of the risk" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 847).

4

For these purposes, "[i]t does not matter whether the risk comes from multiple sources or from one source, and it does not matter whether the prisoner is at risk for reasons personal to him or because all the prisoners face the risk." *Mayoral v. Sheahan*, 245 F.3d 934, 938–39 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 843–44); *accord Street*, 102 F.3d at 815 & n.12 ("An Eighth Amendment plaintiff might demonstrate that he was subject to a substantial risk of serious harm because he was subject to a specific risk of harm. That plaintiff cannot be *required* to show that he was subject to a specific risk of harm, however."). However, negligent disregard of a risk to prisoner safety "is quite different" than deliberate indifference to the risk. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). An unintended injury resulting from lack of due care does not involve the requisite level of subjective culpability to amount to cruel and unusual punishment, whereas injury resulting from deliberate indifference to inmate safety does. *See id.* at 347–48; *see also Farmer*, 511 U.S. at 837 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'").

Accordingly, Plaintiff may not recover under Section 1983 for any negligent failure of Risper or CoreCivic to secure his safety from the November 8, 2019 attack. His bare allegation that Defendants "knowingly and willingly" declined to enforce unidentified security protocols, the correctional officers' oath of office, or applicable criminal laws (Doc. No. 1 at 2) is not sufficient to establish a colorable claim of deliberate indifference to an identifiable risk to his safety. Nor does he allege that the metal detector in his housing unit was in fact nonoperational, or that Defendants knew it to be so. Even liberally construed, Plaintiff's allegation that inmates were able to carry weapons out of the unit on one particular day does not support the inference that Defendant Risper knew of and disregarded a substantial risk of harm, or that the risk was perpetuated by CoreCivic's corporate supervision of TTCC. "Where a plaintiff alleges a constitutional violation

5

based on dangerous general prison conditions, there must be demonstrated a substantial risk of inmate attacks [that were] longstanding, pervasive, well-documented, or expressly noted by prison officials . . . and that the officials being sued were exposed to information concerning the risk and thus, must have known about it." *Sullivan v. Graham*, No. 09-CV-1311 TJM/DRH, 2011 WL 4424355, at *6 (N.D.N.Y. Aug. 5, 2011), *report and recommendation adopted*, No. 09-CV-1311, 2011 WL 4424350 (N.D.N.Y. Sept. 21, 2011) (citation and internal quotation marks omitted); *see also Wright v. City of Euclid, Ohio*, 962 F.3d 852, 881 (6th Cir. 2020) (requiring that municipal liability claim of failure to supervise be supported by "prior instances of unconstitutional conduct" demonstrating that supervising organization "was clearly on notice" of a deficiency that was likely to lead to injury). Plaintiff's allegations fall short of stating a colorable claim that his injuries resulted from Defendants' deliberate indifference to his safety from attack by fellow inmates.

Nor do the alleged violations of applicable prison policies and procedures support a separate constitutional claim. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995) (stating that mandatory language in prison regulations does not create a liberty interest protected by the due process clause); *see also Miles v. Antonini*, No. 04-CV-74147, 2006 WL 1522616, at *2 (E.D. Mich. May 30, 2006) ("the failure to follow a prison policy does not amount to a constitutional violation"); *Barhite v. Brown*, No. 1:14-CV-218, 2014 WL 2918550, at *16 (W.D. Mich. June 26, 2014) ("a violation of prison policy does not give rise to a claim in itself"); *Wiley v. Kentucky Dep't of Corr.*, No. CIV.A. 11-97-HRW, 2012 WL 5878678, at *12 (E.D. Ky. Nov. 21, 2012) ("While the violation of a prison policy may constitute negligence in some cases, it does not amount to a constitutional violation."). Moreover, Plaintiff fails to state a claim based on his allegations of a conspiratorial failure to send him for treatment at an outside hospital, the negligent failure to house him in a different unit after the attack, and the failure to investigate the prison staff

6

following the attack, as he has no right to such accommodations or proceedings under the Constitution. *See King v. King*, No. 3:08-0881, 2009 WL 2223305, at *2 (M.D. Tenn. July 20, 2009) ("The plaintiff's personal belief that he should have received a different type of treatment or been sent to an outside hospital simply does not support a constitutional claim."); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (prisoners do not have "an inherent constitutional right to placement in any particular security classification or housing assignment"); *Gresham v. Granholm*, No. 2:09-cv-231, 2010 WL 104700, at *3 (W.D. Mich. Jan. 7, 2010) (dismissing inmate's Section 1983 claim for refusal to investigate alleged crime by staff).

## CONCLUSION

One can sympathize with Plaintiff in light of the alleged attack and the alleged injuries he suffered from it. It should go without saying that inmates should not be wantonly attacked and intentionally injured by anyone, including fellow inmates. But such an occurrence does not a legal claim make under Section 1983; without more, it does not support a claim under Section 1983, and here, Plaintiff has not made the additional allegations he would need to make. For the reasons set forth above, the Court finds that the complaint fails to state a claim upon which relief may be granted, and that this case must therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE