IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAY'QUAN SHANNON, )
)
    Plaintiff, )
) NO. 3:20-cv-00518
v. )
) JUDGE RICHARDSON
RUBENARD RISPER, et al., )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Before the Court in this dismissed civil rights action is a post-judgment motion to amend the complaint pursuant to Local Rule 15.01 (Doc. No. 8), filed by Plaintiff Day'Quan Shannon, an inmate of the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee.

The Court dismissed this case upon initial screening under the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii), after construing the complaint to raise an Eighth Amendment failure-to-protect claim but finding insufficient factual allegations to allow that claim to proceed. (Doc. No. 5 at 7.) The Court did not at that time invite an amendment to the complaint,[1] and judgment entered one day after the dismissal order. (Doc. No. 7.) While Plaintiff now seeks leave to amend in response to the dismissal under the Local Rule equivalent of Federal Rule of Civil Procedure 15(a),[2] "the Sixth Circuit has stated that post-*judgment* motions to amend are permitted

---

[1] "Although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 347 (6th Cir. 2014) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013)).

[2] Rule 15(a) allows a party to amend its pleading once as a matter of course within 21 days of service of the pleading or a response thereto, and in all other cases encourages the party to seek leave to amend and the district court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1), (a)(2).

[only] if the movant makes the more difficult showing that the case should be reopened under [Federal] Rule 59." *Frazier v. Colthfelt*, No. 19-10389, 2020 WL 914323, at *6 (E.D. Mich. Feb. 7, 2020), *report and recommendation adopted*, No. 19-10389, 2020 WL 905746 (E.D. Mich. Feb. 25, 2020) (emphasis in original) (citing, *e.g.*, *Leisure Caviar, LLC v. U.S. Fish & Wildlife Svc.*, 616 F.3d 612, 615–16 (6th Cir. 2010)). "In other words, amendments by right [under Rule 15(a)] can occur during the period between the dismissal and the entering of judgment, but afterwards, the more specific provision for reopening, Rule 59, applies." *Id.*

Because Plaintiff's motion for leave to amend was filed within 28 days of the Court's judgment of dismissal, it is timely if construed as a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Bishawi*, 628 F. App'x at 346 (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). In this case, the only potential ground upon which to rest an award of Rule 59(e) relief would be the need to prevent manifest injustice.

The Court's Memorandum Opinion accompanying its dismissal order recounted the allegations of Plaintiff's original complaint, as follows:

> Plaintiff alleges that, on November 8, 2019, "CORE CIVIC and its officers" violated a security policy in force at TTCC "by allowing inmates to exit their housing units armed with weapons." (Doc. No. 1 at 1.) He alleges that the metal detectors on each unit "are seldom operational," and that as a result of "[t]he respondents knowingly and willingly den[ying] [him] the right to be secured while housed at CORE CIVIC, TTCC by failing to uphold its Institutional Policy"[3] as well as the correctional officers' oath of office and state and federal criminal law, he suffered eight stab wounds or lacerations. (*Id.* at 1–2 (citing Tenn. Code Ann. §§ 39-16-403, 41-1-103 and 18 U.S.C. §§ 241, 242).) Plaintiff alleges that he insisted upon having his wounds treated at an outside hospital for fear of internal

---

[3] Plaintiff identifies "Policy # 107.01(C) & (J)" but does not explain these policy provisions or how they were violated.

> bleeding, but that he "was denied that right which constitutes conspiracy against rights." (*Id.* at 1.) He states that he was returned to the same housing unit after the attack, despite "a strong possibility of a subsequent attack" since two of his assailants were also housed in the unit, "which constitutes negligence." (*Id.* at 2.) Plaintiff further alleges that an investigation into "employee misconduct and the negligence displayed by . . . Chief of Security [Risper] and other staff members" was not conducted, nor was the formal fact-finding procedure required by prison policy. (*Id.*)

(Doc. No. 5 at 3.) The Court found that these allegations failed to support a plausible claim of deliberate indifference, and that Plaintiff could not recover under Section 1983 for "[a]n unintended injury resulting from lack of due care" in maintaining functional metal detectors, or in failing by other means to ensure that inmates do not possess metal objects they can use as weapons. (*Id.* at 5–6.)

In his pending motion, Plaintiff asserts that CoreCivic's failure to adequately train its staff contributed to his injuries at the hands of his fellow inmates, and that the corporate attitude of deliberate indifference was shown in the fact that he was returned to the same housing unit where his attackers resided. (Doc. No. 8 at 2.) He asserts that CoreCivic and Risper were deliberately indifferent to the safety of the entire inmate population at TTCC based on "the countless number of violent attacks reported, the lack of security, and their inability to properly control the inmate population and fail[ure] to take reasonable measures to abate" this risk of harm. (*Id.*) Plaintiff specifies that Defendants "failed to enforce Policy #506.05 Control of Gates, Perimeter, and Communication; Policy #506.22 Security Staff Assignments; and Policy #506.29 Inspection and Testing of Electronic Security Equipment (metal detectors, etc.)." (*Id.*) He alleges that Defendants were subjectively aware "that the metal detectors in all housing units were not in operation," but also faults them for not requiring inmates entering and exiting the units to pass through the inoperable metal detectors. (*Id.*) Finally, Plaintiff reasserts his claim that the prison medical staff's "refus[al] to send the plaintiff to an outside hospital upon request" for treatment of his stab wounds

3

demonstrates the inadequacy of their training and their deliberate indifference to his safety. (*Id.* at 2–3.)

These new allegations fail to demonstrate a need to reopen this case in order to prevent manifest injustice. To begin with, Plaintiff's new, conclusory allegations of corporate indifference to proper training are not sufficient to support a plausible Section 1983 claim against CoreCivic. *See Johnson v. City of Chicago*, 711 F. Supp. 1465, 1472 (N.D. Ill. 1989) (stating that § 1983 "plaintiff must also plead facts to support his general allegations that it is indeed the policy of the [entity] to inadequately train its officers") (citing *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985) (noting that conclusory allegation that entity has a policy of knowingly acquiescing in individual officer's brutality is insufficient to plead a claim under Section 1983)). And, more significantly to the potential for any manifest injustice, the new allegations in Plaintiff's motion do not cure the chief deficiency of his original complaint: its failure to plausibly allege that the circumstances of his attack and serious injury arose from the deliberate indifference of TTCC's corporate management and Chief of Security rather than their negligence, as he more prominently claimed in the complaint.

As the Court previously found, "Plaintiff's allegation that inmates were able to carry weapons out of the unit on one particular day does not support the inference that Defendant Risper knew of and disregarded a substantial risk of harm, or that the risk was perpetuated by CoreCivic's corporate supervision of TTCC" (Doc. No. 5 at 5); rather, it at best supports the claim that Defendants were negligent in maintaining the unit's metal detectors and otherwise failing to prevent Plaintiff's assailants from possessing weapons, which "is quite different" from deliberate indifference under the Eighth Amendment. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). "[M]ere negligence, or even gross negligence, will not suffice" to establish deliberate indifference.

4

*Cox v. Jackson*, 579 F. Supp. 2d 831, 846 (E.D. Mich. 2008) (quoting *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003)). Moreover, "the known risk of injury must have been a strong likelihood, rather than a mere possibility, before an official's failure to act can constitute deliberate indifference." *Jackson v. Stevens*, 694 F. Supp. 2d 1334, 1341 (M.D. Ga. 2010) (citing, *e.g.*, *Hudson v. Palmer*, 468 U.S. 517 (1984)).

Plaintiff's motion fails to provide factual support for the claim that deficiencies in the security of TTCC's housing units resulted from Defendants' conscious disregard of the risk that inmates would be attacked with weapons. The motion more generally asserts that, because TTCC "is notoriously known as one of the most dangerous penal facilities in Tennessee," Defendants are perpetually on notice of a substantial risk of violence between inmates (Doc. No. 8 at 2); whereas, the particular assertion that security was insufficient to prevent Plaintiff's stabbing on November 8, 2019 is, according to the motion, "a superficial element to the facts." (*Id.* at 1.) But the general dangerousness of the prison setting is not enough to establish a substantial risk of serious harm to inmates. *Woods v. Lecureux*, 110 F.3d 1215, 1225 (6th Cir. 1997) (fact that prison "housed violent prisoners and that violence among the prison population would sometimes occur . . . does not establish an Eighth Amendment violation"). "Prisons are by definition places where violent people are housed involuntarily," and therefore "[a]ll prisons experience incidents of crime that exceed the levels of the outside." *McGhee v. Foltz*, 852 F.2d 876, 880 (6th Cir. 1988) (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). That reality, coupled with the failure of TTCC security measures to prevent the spontaneous incident of violence against Plaintiff, is not sufficient grounds to advance a claim that CoreCivic and Chief of Security Risper were deliberately indifferent to his safety, nor will a manifest injustice occur if Plaintiff is not allowed to reopen the case and amend his complaint.

Accordingly, Plaintiff's motion to amend pursuant to Local Rule 15.01 (Doc. No. 8), construed as a motion to alter or amend the judgment under Federal Rule 59(e), is **DENIED**.

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE